**In the Matter of Rodney R. GILLILAND and Darlene A. Gilliland, Debtors.**

**Bankruptcy No. BK84–1096.**

United States Bankruptcy Court, D. Nebraska.

June 30, 1986.

Michael Snyder, Kearney, Neb., for debtors.

Terri Harder of Jacobson, Orr & Nelson, P.C., Kearney, Neb., for the Bank.

TIMOTHY J. MAHONEY, Bankruptcy Judge.

## MEMORANDUM OPINION

This matter was heard in North Platte on June 17, 1986, on motion by debtor requesting the Court find Norwest Bank Grand Island, N.A., a banking corporation, in contempt of court and to order said bank to refrain from further efforts to collect a discharged debt.

The parties submitted affidavit evidence and the Court heard their arguments. The matter was then taken under advisement.

### Facts

The debtors filed a Chapter 7 petition in 1984. Their schedules listed a debt to First Savings Company, the predecessor to Norwest Bank Grand Island, N.A. That debt was secured by a second mortgage on real estate. The record is not clear, but it appears from argument of counsel that the Bank also had a security interest in an automobile and two horses.

Following the debtors' discharge in bankruptcy, the Bank contacted debtors to obtain possession of the automobile and the horses. Apparently the debtors wanted to keep the collateral. Debtors then executed a new note to the Bank for $6,700, payable in installments. In return, the debtors received less than $100 in cash to pay an insurance premium on one horse and the debtors kept the automobile which was scheduled as valued at $200. In addition, the debtors kept the two horses scheduled as valued at $1,200 total.

The $6,700 note, Exhibit 14, states on its face that it is a rewrite of Note # 60207 which was the note obligation that was discharged by the bankruptcy proceeding. In addition, the $6,700 note shows that debtors received no actual cash by executing the note. Instead, the debtors were credited with paying approximately $6,636 on the discharged obligation and the balance was paid for credit insurance and the insurance on one horse, presumably with the Bank as beneficiary.

No reaffirmation agreement was executed. No request for approval of a reaffirmation agreement was presented to the Court or filed in the bankruptcy file.

The debtors made a few payments on the note and then defaulted. The note was then rewritten. The debtors made one or two payments and defaulted. The Bank then filed suit in County Court of Buffalo County, Nebraska, to collect the balance due. Debtors defended and urged the County Court to find that the underlying obligation had been discharged in bankruptcy and no reaffirmation agreement had been approved pursuant to the Bankruptcy Code and, therefore, the note was void or voidable.

The County Court found against the debtors. The Judge ruled that the two notes signed by the debtors after the bankruptcy discharge were not based upon the discharged obligation and found further that the Bank gave new consideration on such notes. The new consideration was found to be the right of the debtors to keep the collateral and the payment by the Bank of approximately $100 for insurance premiums on the collateral.

Following the entry of the judgment, the Bank proceeded with execution activities

under the Nebraska Statutes. Debtors then filed a motion to reopen their bankruptcy case and find the Bank in contempt for its collection activities regarding a discharged debt.

■ Although this Court is troubled by the fact that debtors did not attempt to reopen their bankruptcy case until after State Court judgment was entered and also troubled by the fact that debtors now appear to be requesting the Bankruptcy Court to act in some appellate capacity over the County Court, nonetheless, this Court has jurisdiction to determine whether or not the discharge injunction of the Bankruptcy Code has been violated. Once the matter has been brought to the attention of the Bankruptcy Court, it should be reviewed by the Bankruptcy Court notwithstanding a finding by the State Court that the judgment debt was not based upon a discharged obligation.

■ This Court finds as fact that the debt upon which the Bank has now obtained a judgment is a debt that was discharged in bankruptcy. The note itself states that fact. No new consideration was given. The insurance premiums benefited only the Bank, not the debtors.

### Conclusions of Law

Bankruptcy Code § 524 defines the effect of a discharge. A discharge operates as an injunction against any act to collect on a debt on which the personal liability of the debtor has been discharged.

Bankruptcy Code § 524(c) provides an exception to the injunction if certain procedures are followed. That section states:

"(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

"(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

"(2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

"(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

"(A) represents a fully informed and voluntary agreement by the debtor; and

"(B) does not impose an undue hardship on the debtor or a dependent of the debtor;

"(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

"(5) the provisions of subsection (d) of this section have been compiled with; and

"(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—

"(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

"(ii) in the best interest of the debtor.

"(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property."

In addition, before such a reaffirmation is binding upon the debtor, the debtor must attend a hearing and be informed of certain rights with regard to such an agreement. § 524(d).

 It is obvious to the Court that the consideration for the post-petition notes was wholly or in part based upon a dischargeable debt. Therefore, before such notes are enforceable, the reaffirmation provisions of the Code must be complied with. They were not.

The notes executed by the debtors to the Bank post petition are void. The debtors are to return whatever remains of the collateral to the Bank.

The payments made by the debtors to the Bank pursuant to the notes must be returned to the debtors. The Bank did not comply with § 524 of the Code and this Court will not permit the Bank to benefit from such noncompliance. If the Bank's arguments were accepted, any creditor could tell a debtor that the debtor can keep the collateral if only the debtor will sign up again on the discharged obligation. This is exactly the reason § 524(c) was adopted. Debtors are protected from the Bank and from themselves by virtue of § 524(c). If that section is not complied with, the Bank enjoys no rights against the debtor and cannot keep payments received in violation of § 524.

### Judgment

■ Judgment is entered against the Bank for the amount of payments made by debtors post discharge. The amount of the payments is not shown in the record. Such amount may be provided by affidavit and counter affidavit to be filed within fifteen (15) days.

Judgment is also entered against the Bank for the amount of attorney fees incurred by debtors in defending the County Court lawsuit and bringing this action before the Bankruptcy Court. The fees incurred by Mr. Snyder are reasonable and necessary. The judgment amount is for $93.75 transcript filing fee, plus $1,308.65 fees and expenses, plus an amount representing Mr. Snyder's fees and expenses for appearing at the North Platte hearing. He may supplement his total requested fees by affidavit filed within fifteen (15) days; any objection to the reasonableness of such supplementary fee amount shall be filed within ten (10) days thereafter.

■ No judgment for contempt shall be entered. The cancellation of the notes, return of payment and payment of fees and expenses of the debtor are sufficient sanction. The fact that a State Court Judge found the notes to be independent of the discharged debt leads the Court to believe reasonable persons could differ on the propriety of the notes and collection activities. Therefore, no intent to violate the Bankruptcy Code is found.

Separate Journal Entry to be entered.